## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

JAMES LYNN HILL,          )
                                    )
             Plaintiff,    )
                                    )
v.                            )     Case No. CIV-07-404-M
                                    )
OFFICER TRUELOVE, *et al.*,    )
                                    )
            Defendants.  )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a federal prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action alleging violations of his constitutional rights.  The matter has been re-referred for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Initially, Defendants filed a Motion to Dismiss [Doc. #49] Plaintiff's Amended Complaint [Doc. #33].  The District Court granted Defendants' motion in part by dismissing Plaintiff's conspiracy claims and all claims brought against Defendants in their official capacities.  The District Court also dismissed Plaintiff's claims based on state and federal criminal statutes.  Plaintiff's excessive force claim was not dismissed.  Currently before the Court is Defendants' Motion for Summary Judgment (with Brief in Support) [Doc. #98] (Motion for Summary Judgment) to which Plaintiff has responded [Doc. #104] (Plaintiff's Response).

It is recommended that the Defendants' Motion be denied.

## I.   **Background**

Plaintiff alleges that Defendants injured him when they employed excessive force against him.  His factual allegations are set forth in the Sworn Statement of James Lynn Hill (Plaintiff's Statement) attached to his Amended Complaint as Exhibit 1 [Doc. #33-3].  According to Plaintiff's Statement, the United States Marshals Service transported him to the Oklahoma County Detention Center (OCDC) on April 5, 2006, where custodial supervision was transferred to the Oklahoma County Sheriff's Department.   Plaintiff states that Defendant Truelove took him and another federal prisoner, identified by Plaintiff as Mr. Marione Kay Smith, to a holding cell and instructed them to disrobe and put their street clothes in the plastic sacks provided by the jail.  When Defendant Truelove returned with jail uniforms, he instructed the two prisoners to remove their shoes and socks, put them in plastic bags and don the jail uniforms.  Once dressed, Defendant Truelove apparently intended for the two prisoners to walk barefoot to the elevator en route to their cells.  According to Plaintiff, Mr. Smith requested socks to wear, and Plaintiff, who had not yet removed his shoes, told Defendant Truelove that the nurse Plaintiff had seen earlier had told him he could keep his shoes to support his previously-injured feet.  Plaintiff states that Defendant Truelove became "agitated" with the two and stated, "We could do this the hard way," as he left the cell.  Defendant Truelove returned with Defendants Sanchez and Streeter.[1]  A fourth officer

---

[1]Plaintiff identified this Defendant as "Jacob Streabor" in the Amended Complaint. *See* Doc. #33 at 2.  Defendants have identified this Defendant as "Corporal Jacob Streeter."

was posted outside the cell with Mr. Smith.[2]  Plaintiff states that as Defendant Sanchez entered the cell he said, "This is Oklahoma County Jail and you will do what you are told." Defendant Sanchez then ordered Plaintiff to turn around and face the wall.  Plaintiff's Statement at 2.  Plaintiff's account of the subsequent force used against him is as follows:

> Once I faced the wall, my face was nose level with a 6" metal grate protruding off the wall.  Sgt. Sanchez then hand cuffed me.  My fingers were straight out, he then twisted them, snapping my tendons and slammed my face into the metal grate.  He then spun me around and [Defendant Streeter] grabbed my hair and told me to put my face on the metal desk, which is about 3 ½' tall. Upon trying to comply, he slammed my face into the desk violently busting my nose open and a hemorrhage [occurred].
>
> Then the three of them slammed me to the ground while I was screaming and crying out in pain and bleeding profusely.  [Repeatedly], Sgt. Sanchez dropped his knee into my head, cussing at me and D.O. Truelove was violently twisting my foot, that I had indicated was injured and [Defendant Streeter] was kicking me in the side of the ribs and head.  Sgt. Sanchez was still holding my middle finger, which he had twisted at an off angle.  While this was taking place, D.O. Truelove delivered the final blows, which were a series of kicks and knee drops to the back of the head.

Plaintiff's Statement at 2.  Plaintiff states that a nurse came to the cell and wiped his bloody nose, but did not offer any medical care.   The jailers removed his bloody clothing. Eventually, Plaintiff was placed in administrative segregation.  Plaintiff's Statement at 3.

---

[2]Defendants contend that Plaintiff "does not allege that John Doe (Officer Russell) participated [by using force]."  Motion for Summary Judgment at 4.  In his response, Plaintiff correctly notes that Officer Russell's failure to intervene could subject Officer Russell to liability. *See* Plaintiff's Response at 4.  *See also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983.") (citation omitted).

Plaintiff states that on April 10, 2006, his lawyer saw him and his bruises and the next day took a statement about the incident and delivered it to a federal marshal who then contacted the jail. On April 15, 2006, a nurse took chest x-rays and ordered Ibuprofen and a muscle relaxer. Plaintiff's Statement at 3. Because he was a pretrial detainee, Plaintiff's excessive force claim is construed as arising under the Due Process Clause.

## II.    Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to qualified immunity and that summary judgment should be granted in their favor on that basis because "no direct evidence exists to support Plaintiff's excessive force claim." Motion for Summary Judgment at 1. Defendants contend that they used "only the minimum force required to regain control of the Plaintiff during the incident." Motion for Summary Judgment at 4. Plaintiff disagrees.

### A.    Standard of Review

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.'" *Hobbs ex rel. Hobbs v. Zenderman*, ___ F.3d ___, 2009 WL 2750707, at *5 (10th Cir. Sep. 1, 2009) (*quoting* Fed. R. Civ. P. 56(c)) (to be published). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). In making this determination, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Hobbs* at *5 (*citing Weigel v. Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008)) (quotation omitted).

4

To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).

**B.**  **Doctrine of Qualified Immunity**

The Supreme Court recently restated its position on the doctrine of qualified immunity:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

*Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 815 (2009).

"'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Hobbs v. Zenderman*, ___ F.3d ___, 2009 WL

2750707 at *9 (Sep. 1, 2009) (*quoting Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 129 S.Ct. at 818) (to be published).[3]

"Once a defense of qualified immunity has been raised, [a court considers] two questions: (1) whether the alleged conduct violated a constitutional right, and if so, (2) whether the law was clearly established at the time of the defendant's actions." *Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1138 (10th Cir. 2006).[4]

### C.   Excessive Force

The analysis of an excessive force claim also involves two prongs: (1) an objective prong that asks "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) a subjective prong under which the plaintiff must show that "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Whenever prison officials stand accused of using excessive physical force, "the core judicial inquiry is that set

---

[3]*Saucier* required courts to determine whether a constitutional violation had occurred before proceeding to consider whether the right at issue was clearly established.  *Saucier*, 533 U.S. at 201. *Pearson* changed the rule set forth in *Saucier* by holding that "the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S.Ct. at 818.

[4]Defendants do not address whether the law regarding the use of excessive force was clearly established at the time they used force to subdue Plaintiff.  Moreover, as the Tenth Circuit Court of Appeals has recognized, "excessive force jurisprudence requires an all-things-considered inquiry with "'careful attention to the facts and circumstances of each particular case[.]'" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (*quoting Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Therefore, this Court will focus on whether there are genuine issues of material fact regarding whether the force used against Plaintiff was excessive in violation of his constitutional rights to due process.

out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7.  The Supreme Court in *Hudson* elaborated on the factors a court should consider in an excessive force case:

> Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.  In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.

*Id.*

In *Whitley*, defendant prison officials shot an inmate while attempting to quell a riot and free a guard who had been taken hostage.  Under those circumstances, the Court found the force used was justified.  In the instant case, taking Plaintiff's well-pled factual allegations as true and viewing the facts in the light most favorable to Plaintiff, Plaintiff's reluctance to relinquish his tennis shoes does not rise to the level of danger faced by prison officials in *Whitley*.[5]

Defendants contend that Plaintiff's injuries "do not indicate the use of unconstitutional force, given the need to restrain Plaintiff and his resistance to [Defendants'] efforts to place

---

[5]Incident reports attached as exhibits to Defendants' Motion for Summary Judgment contradict Plaintiff's benign description of his own actions.  In the Special Report (attached to Defendants' Brief in Support of Motion to Dismiss [Doc. #51]) Danny Hunnicutt states that Plaintiff was "subdued, using minimal force necessary[.]"  A court is not authorized, however, to accept the factual findings of a prison investigation when a plaintiff has presented conflicting evidence.  *See e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

him under control." Motion for Summary Judgment at 10.[6]  But the amount of force that would be reasonable in this case remains a disputed material fact.  Moreover, in an excessive force case, the extent of injury suffered by the inmate is one factor to consider, but "[t]he absence of serious injury. . . does not end [the Eighth Amendment inquiry]."  *Hudson*, 503 U.S. at 8.  Excessive force resulting in "bruises, swelling, loosened teeth, and a cracked dental place, are not *de minimis* for Eighth Amendment purposes."  *Id.* at 10.  With respect to the injury requirement, the Tenth Circuit has held:

> [T]he degree of injury may be highly relevant to the determination of the unreasonableness of the force used. But we decline to adopt a rule today, which we believe would be inconsistent with *Hudson*, that permits an officer to beat an inmate so long as the resulting injuries are neither permanent nor require medical attention.

*United States v. LaVallee*, 439 F.3d 670, 688 (10th Cir. 2006).  There are genuine issues of material fact regarding the amount of force used, the actions of Plaintiff which may have contributed to the amount of force used, and whether the force used was reasonable.  Because this Court cannot say, as a matter of law, that Defendants have not violated Plaintiff's constitutional rights, Defendants are not entitled to qualified immunity, and their Motion for Summary Judgment should be denied.

---

[6]In Plaintiff's sworn statement attached to his Amended Complaint, Plaintiff states that his nose bled "profusely" as a result of the "beating."  Plaintiff's Statement at 2.  He further states that his bruises were still visible five days later on April 10, 2006, when his criminal defense attorney saw him and then took his statement concerning the incident and gave the statement to the U.S. Marshals.  *Id.* at 3.  Further, Plaintiff describes the pain inflicted by Defendants.  He states that Defendants twisted his fingers when he was handcuffed behind his back, violently twisted his previously-injured foot, slammed his face into a desk, and kicked him in the ribs and head.

## RECOMMENDATION

It is recommended that Defendants' Motion for Summary Judgment [Doc. #98] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by October __6th__, 2009.  *See* LCvR72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __16th__ day of September, 2009.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE